Paul A. Winick (PW - 6710)
Paul M. Fakler (PF - 0249)
THELEN REID & PRIEST LLP
875 Third Avenue
New York, New York 10022
Phone: 212.603.2000
Fax: 212.603.2001
Attorneys for Plaintiff


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JEWS FOR JESUS,                                     : **ECF CASE**
                                                    :
                              Plaintiff,            :  **05 CV 10684 (RMB)(RLE)**
                                                    :
            vs.                                     : **COMPLAINT**
                                                    :
                                                    :
GOOGLE, INC.,                                       :
                                                    :
                              Defendant.            :
                                                    :
                                                    :
-------------------------------------------------------------------X

     Plaintiff, Jews for Jesus, for its Complaint against defendant Google, Inc. ("Google"), by

its counsel Thelen Reid & Priest LLP, alleges upon information and belief as to facts concerning

others and upon personal knowledge as to facts concerning Jews for Jesus, as follows:


### NATURE OF THE ACTION

     1.     This action arises from Defendant's unauthorized use of Plaintiff's famous JEWS

FOR JESUS trademark. For more than thirty years, Plaintiff has built up tremendous public

recognition and goodwill in its JEWS FOR JESUS mark. The mark has continuously been used,

nationally and internationally, in connection with a wide variety of religious goods and services.

As a result, members of the public throughout the United States and the world identify the JEWS

FOR JESUS mark exclusively with Plaintiff.

Dockets.Justia.com

2.     As part of its business, Google offers its Blogger software tools and its Blosgspot hosting service. With Blogger, Google helps customers to easily create, maintain and update weblogs (a kind of Web-based journal with serialized, regular postings by the blogger) using a selection of pre-fabricated layout designs, without needing to know anything about programming or design. With Blogspot, Google allows customers to use Google's computer servers and Internet connections to publish their blogs to the world. As part of this process, Google creates within its computer system a unique Web address at its "blogspot.com" domain for each blog, by allowing the customer to choose a third-level sub-domain. In early 2005, Google created such a third-level sub-domain and Web address using Plaintiff's JEWS FOR JESUS mark and began advertising its goods and services on a weblog hosted by Google at that Web address. Although Plaintiff has never authorized any of these uses of its JEWS FOR JESUS mark, Google's use of the exact mark in the third-level sub-domain is leading the public to believe that the Web address and weblog associated with that address, including Google's advertisements thereon, are sponsored or endorsed by, or affiliated with, Plaintiff.

3.     Google continues its unauthorized use of the JEWS FOR JESUS mark in connection with its Blogspot service, notwithstanding Plaintiff's repeated letters informing Google of Plaintiff's rights and the great and irreparable harm being caused by Google's actions.

4.     Plaintiff, therefore, is left with no alternative but to bring this action for direct, contributory and vicarious trademark infringement, unfair competition, and trademark dilution, and related claims under federal and New York statutory and common law, seeking injunctive relief to prevent Defendant's continued fostering of a false identification and association between Defendant and Plaintiff, and thereby co-opting the goodwill and reputation of Plaintiff's famous and valuable trademark rights.

NY #679275 v1

## JURISDICTION AND VENUE

5.      Jews for Jesus brings this action for direct, contributory and vicarious federal trademark infringement and unfair competition in violation of Sections 32(1) and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a); direct, contributory and vicarious federal trademark dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); deceptive acts and practices in violation of Section 349(h) of the New York General Business Law; false advertising in violation of Section 350-e(3) of the New York General Business Law; injury to business reputation and trademark dilution in violation of Section 360-l of the New York General Business Law; and trademark infringement and unfair competition in violation of the common law of the State of New York and the several states of the United States.

6.      This Court has original subject matter jurisdiction pursuant to 15 U.S.C. § 1121(a) and  28 U.S.C. §§ 1331, 1338(a) and 1338(b).  This Court has supplemental jurisdiction over all other claims asserted herein under 28 U.S.C. § 1367(a).

7.      This Court has general personal jurisdiction over Google because Google maintains a continuous business presence within the State of New York and is doing business in New York.  This Court also has general personal jurisdiction over Google because Google has registered to do business in New York as a foreign corporation and in doing so has appointed the New York Secretary of State as its agent for receiving process and has consented to general personal jurisdiction in New York.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b)-(c), in that Google resides and otherwise conducts business in this District.

NY #679275 v1

## PARTIES

9.      Founded in 1973, Jews for Jesus is an international outreach ministry whose purpose is to proclaim the message that Jesus is the Messiah of Israel and the Savior of the world.  The Jews for Jesus mission includes advocacy, education, and religious camaraderie for both Jews and Gentiles.  Jews for Jesus employs approximately 205 staff members, has twenty-one permanent branches worldwide, and an additional one hundred fifteen chapters which carry on voluntary activities on behalf of Jews for Jesus.  In addition to fixed locations, Jews for Jesus has a mobile team which tours the United States, participating in speaking engagements and furthering the Jews for Jesus message and mission.  Jews for Jesus produces several publications, including a monthly *Jews for Jesus Newsletter*, a monthly electronic newsletter, *Real Time*, the quarterly *Havurah*  and a bi-monthly journal, *Issues: A Messianic Jewish Perspective*, and a catalog from which items such as books, audio and video tapes, and items relating to the Jewish faith and culture can be purchased.  Jews for Jesus currently distributes over 5,000,000 pamphlets annually, and over 55,000,000 since its inception, describing its organization, mission, and beliefs.  Jews for Jesus also maintains a website at www.jewsforjesus.com which promotes the religious services provided by Jews for Jesus and further distributes its' publications.

10.     Jews for Jesus is organized under the laws of the State of California with its national headquarters located in San Francisco, California.  However, Jews for Jesus' most extensive properties (offices and residences) are located within this District at 109 E. 31st Street, New York, New York 10016 and 338-340 E. 43rd Street, New York, New York 10017.  These New York  locations house Jews for Jesus' administrative offices, staff and trainee residences, as well as the Louis B. Goldberg International Missionary Training Center and Library, where Jews for Jesus trains all of its English-speaking missionaries and prepares them for service worldwide.  Although headquartered in San Francisco, more of Jews for Jesus' missionary activities take

NY #679275 v1

place in New York than in any other state. For example, Jews for Jesus distributes more evangelistic literature in New York during the course of a year than in all its other United States branches combined.

11.    Defendant Google owns and operates the largest search engine in the United States, which contains links to and archival copies of over eight billion commercial and non-commercial Internet web pages. Google has recently begun expanding its Internet-related services, including by acquiring other Internet service providers, to include e-mail, mapping, and discussion group and weblog hosting services, as well as expanded search tools covering books, images, online shopping, and scholarly articles. Google makes its search engine, and other goods and services, available to users free of charge, relying on access to its massive user base to generate advertising revenue. Google reported revenues of $3 billion in 2004, and has reported revenues of over $2.6 billion for the first half of 2005. Advertising sales generate approximately 98% of Google's revenues.

12.    Google is a corporation organized and existing under the laws of Delaware, with its principal place of business Mountain View, California. Google maintains a substantial office within this District at 1440 Broadway, 21st floor, New York, NY 10018, and is registered to do business in New York as a foreign corporation.

## THE FAMOUS JEWS FOR JESUS TRADEMARK

13.    As noted above, Jews for Jesus was founded in 1973 as an international outreach ministry whose purpose is to proclaim the message that Jesus is the Messiah of Israel and the Savior of the world. For over 32 years, Jews for Jesus has fulfilled its mission by providing education through classes, lectures, meetings, television, radio and the dissemination of information through magazines, brochures, newspapers and the Internet to millions of people in

NY #679275 v1

the United States and abroad. Jews for Jesus has continuously and vigorously preserved the strength of its mark and actively guarded against its infringement.

14.    Plaintiff has used the name and mark JEWS FOR JESUS continuously in interstate commerce for over 32 years, and has a valid, federally registered trademark comprising the phrase JEWS FOR JESUS

15.    Plaintiff registered the stylized trademark JEWS FOR JESUS (U.S. Reg. No. 1,252,889) on the Principal Register of the United States Patent and Trademark Office on October 4, 1983 and has maintained it continuously since. The registration remains in full force and effect. A copy of Jews for Jesus' registration for JEWS FOR JESUS (stylized) is attached hereto as Exhibit A.

16.    By virtue of its long use and registration, the Jews for Jesus mark is "incontestable" pursuant to the Lanham Act, 15 U.S.C. § 1065.

17.    Jews for Jesus has also filed applications for registration of the word mark JEWS FOR JESUS in connection with various religious goods and services, Serial Nos. 78/725,437 and 78/725,443, which Jews for Jesus expects will issue in due course.

18.    Jews for Jesus extensively promotes and advertises its mission, message and services associated with its mark worldwide, spending a substantial amount of money each year on such promotion and advertising, including the publication and distribution of pamphlets, books, magazines, tapes, and substantial advertising utilizing the JEWS FOR JESUS mark which has appeared for years in such publications as The New York Post, The Washington Post, TV Guide and the Wall Street Journal. Other methods of advertising and promoting the JEWS FOR JESUS mark include billboards on streets, in commuter trains and in bus transit shelters.

NY #679275 v1

19.    For years, Jews for Jesus has been the subject of extensive media coverage in a wide variety of publications and broadcast media throughout the United States and abroad. A recent search of the ALLNEWS file on LEXIS revealed over 2,700 news articles since 1973 concerning Jews for Jesus. In cyberspace, the JEWS FOR JESUS mark is even more well-known, with over 204,000 Internet website pages containing some discussion of Jews for Jesus, a number which is growing every day.

20.    By reason of the extensive promotion, advertising, media coverage and the enormous number of persons who have received information about Jews for Jesus, the JEWS FOR JESUS trademark--since long prior to Defendant Google's acts complained of herein--has come to be recognized by the public as identifying Jews for Jesus and its mission, message, and services, and readily serves to identify and distinguish Jews for Jesus in the public marketplace. In this manner, the inherently distinctive JEWS FOR JESUS mark has acquired an enormous amount of additional secondary meaning, causing the mark to become famous among the public.

## THE INTERNET DOMAIN NAME SYSTEM

21.    The Internet is a worldwide, publicly-accessible network of interconnected computers. Computers connected to the Internet transmit and receive data using a standardized Internet Protocol ("IP"), among other standardized data protocols. Through the transmission of data, Internet users are able to establish and use various Internet-based services and resources that have rapidly become an integral part of modern communication, such as e-mail, online chat services, bulletin boards and websites.

22.    Crucial to the functioning of the Internet is the domain name system. In order to send and receive data, every connection to the Internet must have a unique Internet Protocol address ("IP Address"), made up of a string of four numbers separated by dots, for example

7

12.39.231.240. This IP Address serves to identify each unique node on the Internet and allows data to reach its intended target.

23.     Although IP Addresses work perfectly well to allow computers to connect with one another, human minds present quite another proposition. Most people would be unable to remember all of the IP Addresses necessary to establish the various connections required to use the Internet. Because of this, the domain name system was devised to substitute an alphanumeric "domain name" for the numerical IP Address, allowing Internet users to create and use recognizable words to form their domain names. Using this system, the Internet user is able to refer to various points of access on the Internet by these easy-to-remember domain names, which the computers then match up with the underlying IP Address necessary to connect with the user of a domain.

24.     Unlike an IP Address, which must comprise four discrete numbers separated by dots, a domain name may consist of two or more character strings, or labels, separated by dots. Theoretically, each label may consist of up to 63 characters and a domain name may comprise up to 127 labels, although most domain names use only three labels, such as www.jewsforjesus.org . The rightmost label, in practice usually consisting of two or three characters, is called the top-level domain. The most common example of a top-level domain is ".com" which is the most widely used top-level domain for general and commercial Internet users. Other top-level domains include ".org," ".net" and ".gov."

25.     Each label to the left of the top-level domain label is considered a sub-domain of the domain established by the labels to the right of it, and is also considered another "level" of the domain. Thus, the label directly to the left of the top-level domain is called the second-level domain, and is a sub-domain of the top-level domain. The label directly to the left of the second-

8

level domain is called the third-level domain and is a sub-domain of the second-level domain.

An example of a typical, three-level domain name is www.jewsforjesus.org, which is the domain

name used by Jews for Jesus to host the home page of its website.

26.     When an Internet user enters the domain name www.jewsforjesus.org into a web

browser for the purpose of viewing the Jews for Jesus website, the browser must use the domain

name system to "resolve" the domain name to its corresponding IP Address, so that the proper

connection can be made to access the website over the Internet.  The web browser does this by

sending out multiple, recursive requests to other computer servers connected to the Internet,

which maintain databases of registered domain names and their corresponding IP Addresses or

parts thereof.  It may take numerous such requests through this decentralized system of

networked "DNS" servers before the domain name is fully resolved to the correct IP Address.

This process all takes place in a fraction of a second, invisibly to the user, after which time the

web browser connects with the requested host computer and displays the website served by that

host at the appropriate IP Address.

27.     Top-level domains are controlled by Internet Corporation for Assigned Names

and Numbers ("ICANN"), which in turn licenses control of the generic top-level domains (i.e.,

.com, .net, .org, .biz) to various domain name registrars.  For each given top-level domain, the

respective registry maintains the registration of every second-level domain within that top-level

domain.  For some top-level domains, numerous registrars are empowered to register second-

level domains in addition to the registrar, but the registrar remains responsible for maintaining

the overall registry for all of the second-level domains within that top-level domain.  For

example, Verisign, Inc. is the registrar of the .com top-level domain.  Verisign, as well as

numerous registrars accredited by ICANN, are able to register second-level domains within the

.com top-level domain. In order for the domain name system to work, each subdomain must be unique within its domain. Thus, while there may be one registration for jewsforjesus.com and one registration for jewsforjesus.org, there cannot be two different registrations for jewsforjesus.org. In this manner, each top-level domain is carved up into many unique second-level domains, generally on a first come-first served basis.

28.    Once a person or business registers a second-level domain, that registrant is able, similar to a domain name registrar, to carve up its second-level domain into numerous unique third-level sub-domains, each of which is capable of resolving to a different server or website. Thus, the registrant of the second-level domain forsale.com could create an almost unlimited number of third-level sub-domains, yielding Web addresses such as cocacola.forsale.com, microsoft.forsale.com, disney.forsale.com and the like. The registrant of the second-level domain would at all times control the server or website to which each sub-domain resolves.

## THE ADVENT OF WEBLOGS

29.    Much of the commerce and communications on the Internet have utilized a service available through the Internet called the World Wide Web. The term "World Wide Web" or "Web" refers to an information space in which items of content, called resources, are available through the Internet by identification and may be located using the "Uniform Resource Locator" or "URL" standard. Every piece of content available on the Web has a unique URL, also called a "Web address." This URL both identifies the resource and indicates how to locate the resource over the Internet, using the Domain Name System described above.

30.    A typical example of a resource commonly found on the World Wide Web is a website. A website consists of any number of individual Web pages, each of which contains various types of content such as text, graphics, photographs, audio and video. Generally, the

10

pages of a website will be accessible by hyperlinks from a main page, or home page located at a root URL. A fundamental feature of websites is the use of hyperlinks to jump from page to page, or resource to resource. Websites have become common tools of communication and commerce, and much of the litigation concerning the Internet has revolved around second-level domain names and their associated websites.

31.    As the use of websites has become commonplace, a particular type of website has recently become increasingly popular. A "weblog," or "blog" for short, is a website at which an individual or a group makes available content, usually in the form of text but sometimes also including video, audio, photographs and hyperlinks, on a regular (and often daily) basis. Each individual periodic addition to the blog is called a post or entry. The act of creating and maintaining a blog is called blogging, and the individual doing the blogging is referred to as a blogger.

32.    Unlike a typical website, which may have an elaborate structure and many pages with potentially changing layouts and designs, a blog is usually composed of a few static templates, such as a main page (containing the most recent entries in reverse chronological order), an archive page and an individual post page, into which content is fed from a database. For each individual post, blogs usually allow readers to append comments about the post.

33.    Although websites were previously used in some instances for personal diaries and journals, weblogs as the term is now commonly understood go back to at least 1994. The term weblog is believed to have been coined in 1997, and the term blog is believed to have been coined in 1999.

34.    Blogging began to take off in 1999, when hosted weblog tools first became available, which provided "pre-fabricated" templates for blogs and hosting services so that

NY #679275 v1

individuals merely had to enter the text for each posting, and the tools would format the text into the blog template and the hosting service made the finished blog available to the Internet on its computer servers. With these tools, such as the Blogger tools and Blogspot hosting service originally developed by Pyra Labs and eventually purchased by Google, any individual, even without programming or other technical know-how, could easily publish a blog.

## GOOGLE'S BLOGGER SOFTWARE AND BLOGSPOT SERVICE

35.    As noted above, there are two components to Google's blog-related goods and services. First, Google provides the Blogger software tools at its website www.blogger.com . With Blogger, a user chooses a pre-fabricated template of the layout he or she wishes the blog to have. Then all the user has to do is enter the content of his or her posts whenever the mood strikes. When the user is finished with a given post, he or she need merely click on a button and the software formats the content and incorporates is into the pre-fabricated blog. The Blogger tools also allow the user to control other features of the blog, such as commenting and archiving.

36.    Once a user has created a blog using the Blogger tools, the user may simply keep the resulting blog on his or her own computer and allow public access to the Internet from there. As an alternative, however, Google also offers the Blogspot service, where it hosts the blog on Google's own computer servers. To make these blogs available on its servers, Google must create a unique URL for each such blog. Google does this by creating a unique third-level sub-domain for each hosted blog at its blogspot.com second-level domain.

37.    Thus, as part of the registration process for the Blogspot service, users select a third-level sub-domain for use in the Web address of their blog, which usually corresponds to the name of their blog. For example, if a user is creating a blog about wine which has been named "in vino veritas," he or she might ask to be assigned invinoveritas.blogspot.com. If that third-

NY #679275 v1

level sub-domain is available, Google will create the corresponding URL on its servers, and allocate that URL, as well as physical space on its servers, to the user.

38.    Google allows users to register for the Blogspot service under a fictional user name, and gives the user the option of how much, if any, identifiable information about the user is available to the public. Thus, Blogspot users may remain completely anonymous if they wish.

39.    The Blogspot service is very popular because most individuals do not have the sophistication or inclination to set up dedicated computer servers accessible by the Internet on an around-the-clock basis, nor do they wish to make their personal computers accessible to the public on such a basis.

40.    Moreover, Google does not yet charge a fee to users for the service. Instead, in its terms of service agreement, Google reserves the right to place advertising on all Blogspot-hosted blogs. Pursuant to this provision, Google places third-party advertising on certain of its hosted blogs. Google also places its own advertising for the Blogger tools and the Blogspot service at the top of and within every Blogspot-hosted blog.

41.    Another benefit of using the Blogspot hosting service is centralization. There are no centralized indices of all of the blogs available on the Internet. Blog search engines are relatively recent developments and it remains unclear how effective they are. Consequently, someone searching for a blog about a particular subject or company is likely to try to find such a blog by guessing at a URL at a popular blog-hosting domain such as blogspot.com. For example, someone looking for an official blog about Google might enter google.blogspot.com as a URL, and indeed that person would be directed to Google's official weblog.

NY #679275 v1

## UNLAWFUL CONDUCT BY GOOGLE

42.    In or about January 2005, an unknown person registered for the Blogspot service under the user name "Whistle Blower" and allowed no information to be available to the public in his or her user profile.  A copy of Whistle Blower's user profile is attached hereto as Exhibit B.

43.    Using the Blogger tools and the Blogspot service, Whistle Blower created a blog titled "Jews for Jesus" and requested the third-level sub-domain "jewsforjesus" from Google. Google created the URL jewsforjesus.blogspot.com on its servers and allocated that URL and third-level sub-domain to Whistle Blower, along with space on its servers to hold the blog.

44.    Google then published, and continues to publish, a blog on its servers, accessible at jewsforjesus.blogspot.com (the "Infringing Blog").  When Whistle Blower makes changes to the Infringing Blog using the Blogger tools, Google implements those changes to the files resident on the Google servers and then publishes the updated Infringing Blog to the Internet from those servers.  Although the Infringing Blog does not yet contain any third-party advertisements, Google has inserted advertisements for its Blogger tools and Blogspot service in various places on the layout of the Infringing Blog.  A copy of the Infringing Blog, titled "Jews for Jesus" and available from Google's servers at jewsforjesus.blogspot.com, is attached hereto as Exhibit C.

45.    Jews for Jesus has not authorized any use by Google or Whistle Blower of the JEWS FOR JESUS trademark in connection with their goods and services, including the Infringing Blog.

46.    Jews for Jesus first became aware of the Infringing Blog in the Spring of 2005. After careful consideration, Jews for Jesus instructed its attorneys to write a letter to Google, advising Google of Plaintiff's trademark rights and the infringement and dilution caused by the

acts of Google and Whistle Blower. Jews for Jesus demanded that Google cease and desist from these acts and requested that Google allow Plaintiff to use the third-level domain "jewsforjesus" to establish an official, authorized blog at that address. The letter was sent via certified mail on May 5, 2005, and was received by Google on May 11, 2005. A copy of this letter is attached hereto as Exhibit D.

47.    Despite receiving Plaintiff's letter, Google did not respond in any way. Plaintiff, again through its attorneys, sent a follow-up letter on June 13, 2005 via certified mail, noting Google's failure to respond and requesting a response. A copy of this letter is attached hereto as Exhibit E.

48.    Although both certified letters were sent to Google's legal department, on June 24, 2005, Google sent an anonymous e-mail, merely from "Blogger Support," purportedly to respond to Plaintiff's second letter. In this e-mail, Google completely failed to address the issues raised by Plaintiff. Rather, Google generically disclaimed any responsibility for its acts, stating that "Blogger is a provider of content creation tools, not a mediator of that content. We allow our users to create blogs, but we don't make any claims about the content of these pages. In cases where contact information for the author is listed on the page, we recommend working directly with this person to have this information removed or changed." A copy of this e-mail is attached hereto as Exhibit F.

49.    Not only does this brief, generic response completely fail to address Google's infringing and diluting acts taken in connection with its Blogspot hosting service, it also ignores the fact, of which Google is well aware, that Plaintiff has no way of locating the anonymous "Whistel Blower" or even determining who he or she is.

NY #679275 v1

50.    Google's acts of creating the "jewsforjesus" third-level sub-domain within its blogspot.com domain, allocating that third-level domain and the resulting URL to Whistle Blower, hosting a blog on its servers, accessible at that URL, titled "Jews for Jesus" and placing advertisements for Google's goods and services while reserving the right to place other, third-party advertisements on that blog, are likely to cause confusion or mistake, or are likely to deceive consumers into thinking that the infringing URL and blog are authorized by, or affiliated, connected or otherwise associated with Plaintiff, Jews for Jesus.

51.    These acts by Google are also diminishing, blurring and tarnishing the secondary meaning and brand association existing in Plaintiff's famous JEWS FOR JESUS mark, thereby diluting the mark.

52.    In addition to its own directly infringing and diluting acts, Google has induced Whistle Blower's infringing and diluting acts, has provided the means for Whistle Blower to engage in those acts with actual or constructive knowledge of Whiste Blower's infringement, and has exercised joint control with Whistle Blower over the infringing and diluting third-level domain, URL and weblog at issue in this case.

53.    Google has engaged in these unlawful activities intentionally, willfully and in bad faith, and has continued to do so even after being put on notice of Google's rights and the irreparable harm being caused by those acts.

54.    Google's activities have caused and will continue to cause Plaintiff great and irreparable harm and damage.  Unless permanently restrained and enjoined by this Court, Defendant will persist in its unlawful activities, thereby causing further damages and irreparable harm to Plaintiff and the public interest.

55.    Due to this irreparable harm, Jews for Jesus has no adequate remedy at law.

NY #679275 v1

## Count I: Federal Trademark Infringement

56.    Jews for Jesus hereby realleges and incorporates herein the allegations set forth in paragraphs 1-55 of this Complaint.

57.    Defendant, without the consent of Plaintiff, has used and will continue to use in commerce designations confusingly similar to Jews for Jesus' registered JEWS FOR JESUS trademarks on or in connection with the sale, offering for sale, distribution, or advertising of its goods and services.  Such use is likely to cause confusion, or to cause mistake, or to deceive.

58.    The aforesaid acts of Defendant constitute trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

59.    The aforesaid acts of Defendant have been intentional, willful and in bad faith.

60.    The aforesaid acts of Defendant have caused, and are causing, great and irreparable harm to Plaintiff and, unless permanently restrained by this Court, said irreparable injury will continue.

## Count II: Federal Unfair Competition

61.    Jews for Jesus hereby realleges and incorporates herein the allegations set forth in paragraphs 1-60 of this Verified Complaint.

62.    The aforesaid acts of Defendant constitute use in commerce of words, terms, names, symbols and devices, and combinations thereof; false designation of origin; false and misleading descriptions of fact; and false and misleading descriptions of fact that are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of Defendant with Plaintiff, or as to the origin, sponsorship or approval of Defendant's services, goods or other commercial activities by Jews for Jesus.

NY #679275 v1

63.     The aforesaid acts of Defendant constitute use in commerce of words, terms, names, symbols and devices, and combinations thereof; false designation of origin; false and misleading descriptions of fact; and false and misleading descriptions of fact in commercial advertising or promotion that misrepresents the nature, characteristics or qualities of Defendant's services, goods or other commercial activities.

64.     The aforesaid acts of Defendant constitute false designation of origin and false and misleading descriptions and representations in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

65.     The aforesaid acts of Defendant were willfully intended to trade on the reputation and the goodwill associated with Plaintiff's JEWS FOR JESUS mark.

66.     The aforesaid acts of Defendant have caused, and are continuing to cause, great and irreparable harm to Jews for Jesus. Unless permanently restrained by this Court, this irreparable injury will continue.

### Count III: Federal Trademark Dilution

67.     Jews for Jesus hereby realleges and incorporates herein the allegations set forth in paragraphs 1-66 of this Complaint.

68.     The aforesaid acts of Defendant constitute commercial use beginning after the JEWS FOR JESUS mark had become famous and are diluting, by blurring and tarnishment, the distinctive quality of the JEWS FOR JESUS mark in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

69.     The aforesaid acts of Defendant were willfully intended to trade on Plaintiff's reputation and to dilute the famous JEWS FOR JESUS mark.

18

70.    The aforesaid acts of Defendant have caused, and are continuing to cause, great and irreparable harm to Jews for Jesus. Unless permanently restrained by this Court, this irreparable injury will continue.

## Count IV: Contributory Federal Trademark Infringement

71.    Jews for Jesus hereby realleges and incorporates herein the allegations set forth in paragraphs 1-70 of this Complaint.

72.    Whistle Blower, without the consent of Plaintiff, has used and will continue to use in commerce designations confusingly similar to Jews for Jesus' registered JEWS FOR JESUS trademarks on or in connection with the sale, offering for sale, distribution, or advertising of its goods and services. Such use is likely to cause confusion, or to cause mistake, or to deceive.

73.    The aforesaid acts of Whistle Blower constitute trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

74.    Defendant has intentionally induced Whistle Blower to engage in his or her infringing activities.

75.    Defendant has provided, and continues to provide, the means by which Defendant engages in such infringing activities, with actual or constructive knowledge of Defendant's infringing activities.

76.    The aforesaid acts of Defendant have been intentional, willful and in bad faith.

77.    The aforesaid acts of Defendant have caused, and are causing, great and irreparable harm to Plaintiff and, unless permanently restrained by this Court, said irreparable injury will continue.

19

### Count V: Vicarious Federal Trademark Infringement

78.    Jews for Jesus hereby realleges and incorporates herein the allegations set forth in paragraphs 1-77 of this Complaint.

79.    Whistle Blower, without the consent of Plaintiff, has used and will continue to use in commerce designations confusingly similar to Jews for Jesus' registered JEWS FOR JESUS trademarks on or in connection with the sale, offering for sale, distribution, or advertising of its goods and services.  Such use is likely to cause confusion, or to cause mistake, or to deceive.

80.    The aforesaid acts of Whistle Blower constitute trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

81.    Defendant and Whistle Blower exercise joint control over the infringing domain and weblog.

82.    The aforesaid acts of Defendant have been intentional, willful and in bad faith.

83.    The aforesaid acts of Defendant have caused, and are causing, great and irreparable harm to Plaintiff and, unless permanently restrained by this Court, said irreparable injury will continue.

### Count VI: Contributory Federal Unfair Competition

84.    Jews for Jesus hereby realleges and incorporates herein the allegations set forth in paragraphs 1-83.

85.    The aforesaid acts of Whistle Blower constitute use in commerce of words, terms, names, symbols and devices, and combinations thereof; false designation of origin; false and misleading descriptions of fact; and false and misleading descriptions of fact that are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association

20

NY #679275 v1

of Whistle Blower with Plaintiff, or as to the origin, sponsorship or approval of Whistle Blower's services, goods or other commercial activities by Jews for Jesus.

86.    The aforesaid acts of Whistle Blower constitute use in commerce of words, terms, names, symbols and devices, and combinations thereof; false designation of origin; false and misleading descriptions of fact; and false and misleading descriptions of fact in commercial advertising or promotion that misrepresents the nature, characteristics or qualities of Whistle Blower's services, goods or other commercial activities.

87.    The aforesaid acts of Whistle Blower constitute false designation of origin and false and misleading descriptions and representations in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

88.    Defendant has intentionally induced Whistle Blower to engage in his or her infringing activities.

89.    Defendant has provided, and continues to provide, the means by which Whistle Blower engages in such infringing activities, with actual or constructive knowledge of Whistle Blower's infringing activities.

90.    The aforesaid acts of Whistle Blower and Google were willfully intended to trade on the reputation and the goodwill associated with Plaintiff's JEWS FOR JESUS mark.

91.    The aforesaid acts of Defendant have caused, and are continuing to cause, great and irreparable harm to Jews for Jesus.  Unless permanently restrained by this Court, this irreparable injury will continue.

### Count VII: Vicarious Federal Unfair Competition

92.    Jews for Jesus hereby realleges and incorporates herein the allegations set forth in paragraphs 1-91.

NY #679275 v1

93.    The aforesaid acts of Whistle Blower constitute use in commerce of words, terms, names, symbols and devices, and combinations thereof; false designation of origin; false and misleading descriptions of fact; and false and misleading descriptions of fact that are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of Whistle Blower with Plaintiff, or as to the origin, sponsorship or approval of Whistle Blower's services, goods or other commercial activities by Jews for Jesus.

94.    The aforesaid acts of Whistle Blower constitute use in commerce of words, terms, names, symbols and devices, and combinations thereof; false designation of origin; false and misleading descriptions of fact; and false and misleading descriptions of fact in commercial advertising or promotion that misrepresents the nature, characteristics or qualities of Whistle Blower's services, goods or other commercial activities.

95.    The aforesaid acts of Whistle Blower constitute false designation of origin and false and misleading descriptions and representations in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

96.    Defendant and Whistle Blower exercise joint control over the infringing domain and weblog.

97.    The aforesaid acts of Whistle Blower and Google were willfully intended to trade on the reputation and the goodwill associated with Plaintiff's JEWS FOR JESUS mark.

98.    The aforesaid acts of Defendant have caused, and are continuing to cause, great and irreparable harm to Jews for Jesus. Unless permanently restrained by this Court, this irreparable injury will continue.

NY #679275 v1

### Count VIII: Contributory Dilution

99.    Jews for Jesus hereby realleges and incorporates herein the allegations set forth in paragraphs 1-98 of this Complaint.

100.    The aforesaid acts of Whistle Blower constitute commercial use beginning after the JEWS FOR JESUS mark had become famous and are diluting the distinctive quality of the JEWS FOR JESUS mark and tarnishing the JEWS FOR JESUS mark in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

101.    Defendant has intentionally induced Whistle Blower to engage in his or her diluting activities.

102.    Defendant has provided, and continues to provide, the means by which Whistle Blower engages in such diluting activities, with actual or constructive knowledge of Whistle Blower's diluting activities.

103.    The aforesaid acts of Whistle Blower and Google were willfully intended to trade on Plaintiff's reputation and to dilute the famous JEWS FOR JESUS mark.

104.    The aforesaid acts of Defendant have caused, and are continuing to cause, great and irreparable harm to Jews for Jesus.  Unless permanently restrained by this Court, this irreparable injury will continue.

### Count IX: Vicarious Federal Dilution

105.    Jews for Jesus hereby realleges and incorporates herein the allegations set forth in paragraphs 1-104 of this Complaint.

106.    The aforesaid acts of Whistle Blower constitute commercial use beginning after the JEWS FOR JESUS mark had become famous and are diluting the distinctive quality of the

23

JEWS FOR JESUS mark and tarnishing the JEWS FOR JESUS mark in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

107.    Defendant and Whistle Blower exercise joint control over the diluting domain and weblog.

108.    The aforesaid acts of Whistle Blower and Google were willfully intended to trade on Plaintiff's reputation and to dilute the famous JEWS FOR JESUS mark.

109.    The aforesaid acts of Defendant have caused, and are continuing to cause, great and irreparable harm to Jews for Jesus. Unless permanently restrained by this Court, this irreparable injury will continue.

### Count X: Deceptive Acts and Practices Under New York Law

110.    Jews for Jesus hereby realleges and incorporates herein the allegations set forth in paragraphs 1-109 of this Complaint.

111.    The aforesaid acts of Defendant constitute deceptive acts or practices in the conduct of business, trade or commerce, or in the furnishing of any service in New York State in violation of New York General Business Law § 349(h).

112.    The aforesaid acts of Defendant have caused, and are continuing to cause, great and irreparable harm to Jews for Jesus. Unless permanently restrained by this Court, this irreparable injury will continue.

### Count XI: False Advertising Under New York Law

113.    Jews for Jesus hereby realleges and incorporates herein the allegations set forth in paragraphs 1-112 of this Complaint.

NY #679275 v1

114.    By the aforesaid acts, Defendant misleadingly advertised its service, in that Defendant made statements, used words, designs, devices, sounds or combinations thereof that were materially misleading with respect to that service.

115.    The aforesaid acts of Defendant constitute false advertising in the conduct of business, trade or commerce, or in the furnishing of any service in the State of New York, in violation of New York General Business Law § 350-e(3).

116.    The aforesaid acts of Defendant have caused, and are continuing to cause, great and irreparable harm to Jews for Jesus.  Unless permanently restrained by this Court, this irreparable injury will continue.

### Count XII: Injury To Business Reputation and Dilution Under New York Law

117.    Jews for Jesus hereby realleges and incorporates herein the allegations set forth in paragraphs 1-116 of this Complaint.

118.    The aforesaid acts of Defendant constitute commercial use beginning after the JEWS FOR JESUS mark had become famous and are diluting, or are likely to dilute, the distinctive quality of the JEWS FOR JESUS mark.

119.    The aforesaid acts of Defendant are likely to injure the business reputation of Jews for Jesus and to dilute the distinctive quality of the JEWS FOR JESUS mark, in violation of New York General Business Law § 360-l.

120.    The aforesaid acts of Defendant have caused, and are continuing to cause, great and irreparable harm to Jews for Jesus.  Unless permanently restrained by this Court, this irreparable injury will continue.

NY #679275 v1

## Count XIII: Common Law Trademark Infringement

121.    Jews for Jesus hereby realleges and incorporates herein the allegations set forth in paragraphs 1-120 of this Complaint.

122.    The aforesaid acts of Defendant constitute the use of a designation that is likely to cause confusion as to the source of Defendant's services.

123.    The aforesaid acts of Defendant constitute trademark infringement in violation of the common law of the State of New York as well as several states of the United States.

124.    The aforesaid acts of Defendant have caused, and are continuing to cause, great and irreparable harm to Jews for Jesus.  Unless permanently restrained by this Court, this irreparable injury will continue.

## Count XIV: Common Law Unfair Competition

125.    Jews for Jesus hereby realleges and incorporates herein the allegations set forth in paragraphs 1-124 of this Complaint.

126.    The aforesaid acts of Defendant constitute commercial use of a designation that is likely to cause confusion as to the source of Defendant's services.

127.    The aforesaid acts of Defendant constitute unfair competition, in violation of the common law of the State of New York as well as the several states of the United States.

128.    The aforesaid acts of Defendant have caused, and are continuing to cause, great and irreparable harm to Jews for Jesus.  Unless permanently restrained by this Court, this irreparable injury will continue.

NY #679275 v1

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jews for Jesus requests judgment against Defendant Google as follows:

1.    That Defendant, and each of its officers, directors, agents, servants, employees and representatives, and those persons in active concert or participation with them or any of them, be preliminarily and permanently enjoined and restrained from:

(a)    Using on or in connection with the production, publication, display, distribution, or in any manner dissemination of weblogs, web pages or other content, including as a domain name or component thereof, the designation "Jews for Jesus" or any colorable imitations thereof or any designation confusingly similar thereto;

(b)    Representing by any means whatsoever, directly or indirectly, or doing any other acts calculated or likely to cause confusion, mistake or to deceive consumers into believing that Defendant's services and any related goods are the services or products of Plaintiff, or that there is any affiliation or connection between Plaintiff or Plaintiff's services and goods and Defendant or Defendant's services and goods, and from otherwise unfairly competing with Plaintiff; and

(c)    Using any designation in a manner so as to cause the dilution of the distinctive quality of the famous JEWS FOR JESUS mark.

2.    That Defendant be required to transfer use of the domain "jewsforjesus.blogspot.com" to Plaintiff.

3.    That Defendant be directed to file with this Court and to serve upon Plaintiff within thirty (30) days after service upon Defendant of this Court's injunction issued in this action, a written report by Defendant, signed under oath, setting forth in detail the manner in which Defendant has complied with the injunction.

NY #679275 v1

4.      That Plaintiff recover its damages sustained as a result of Defendant's trademark infringement, unfair competition and dilution, together with an accounting of Defendant's profits arising from such activities, and that the Court exercise its discretion and enter a judgment for such additional sums as the Court shall find to be just, according to the egregious nature of the acts of Defendant.

5.      That the Plaintiff recover treble damages under 15 U.S.C. § 1117 by reason of the willful and deliberate acts of federal trademark infringement and unfair competition by Defendant.

6.      That Plaintiff recover treble damages under New York General Business Law §§ 349(h) and 350-d by reason of Defendant's acts of deceptive trade practices.

7.      That Plaintiff recover its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117 and New York General Business Law §§ 349(h) and 350-d.

8.      That Plaintiff recover Defendant's profits and/or damages by reason of Defendant's acts of trademark infringement and unfair competition under common law.

9.      That Plaintiff recover its taxable costs and disbursements herein.

10.      That Plaintiff have such other and further relief as the Court may deem just and proper.

Dated:  December 21, 2005

THELEN REID & PRIEST LLP

By:   s/Paul A. Winick
       Paul A. Winick (PW - 6710)
       Paul M. Fakler (PF - 0249)
       875 Third Avenue
       New York, New York 10022
       Phone:  212.603.2000
       Fax:  212.603.2001
       Attorneys for Plaintiff

NY #679275 v1

**Exhibit A**

Int. Cl.: 16

Prior U.S. Cl.: 38

## United States Patent and Trademark Office

**Reg. No. 1,252,889**
Registered Oct. 4, 1983

## TRADEMARK
**Principal Register**

# JEWS F★R JESUS

Hineni Ministries (California non-profit corporation)
60 Haight St.
San Francisco, Calif. 94102

For: RELIGIOUS PAMPHLETS, in CLASS 16 (U.S. Cl. 38).

First use Feb. 20, 1973; in commerce Feb. 20, 1973.

No claim is made to the exclusive right to use the star of David, apart from the mark as shown. No claim is made to the exclusive right to use the words "Jews" and "Jesus", apart from the mark as shown.

Ser. No. 344,533, filed Jan. 5, 1982.

JOHN P. RYNKIEWICZ, Examining Attorney

UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office

OFFICE OF ASSISTANT COMMISSIONER FOR TRADEMARKS
2900 Crystal Drive
Arlington, Virginia   22202-3513

*RENEWAL DUE 10/4/13*

REGISTRATION NO: 1252889     SERIAL NO: 73344533     MAILING DATE: 02/21/2003
REGISTRATION DATE: 10/04/1983
MARK: JEWS FOR JESUS AND DESIGN
REGISTRATION OWNER: JEWS FOR JESUS
CORRESPONDENCE ADDRESS:

JOHN A. HUGHES
TOWNSEND AND TOWNSEND AND CREW LLP
TWO EMBARCADERO CENTER-8TH FLOOR
SAN FRANCISCO, CA 94114-3834

# NOTICE OF ACCEPTANCE
## 15 U.S.C. Sec. 1058(a)(3)

THE COMBINED AFFIDAVIT AND RENEWAL APPLICATION FILED FOR THE ABOVE-IDENTIFIED REGISTRATION MEETS THE REQUIREMENTS OF SECTION 8 OF THE TRADEMARK ACT, 15 U.S.C. Sec. 1058.

ACCORDINGLY, THE SECTION 8 AFFIDAVIT IS ACCEPTED.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# NOTICE OF RENEWAL
## 15 U.S.C. Sec. 1059(a)

THE COMBINED AFFIDAVIT AND RENEWAL APPLICATION FILED FOR THE ABOVE-IDENTIFIED REGISTRATION MEETS THE REQUIREMENTS OF SECTION 9 OF THE TRADEMARK ACT, 15 U.S.C. Sec. 1058.

ACCORDINGLY, THE REGISTRATION IS RENEWED.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

THE REGISTRATION WILL REMAIN IN FORCE FOR CLASS(ES):
016.

GILLIS, BURNIE A
PARALEGAL SPECIALIST
POST-REGISTRATION DIVISION
(703)308-9500

PLEASE SEE THE REVERSE SIDE OF THIS NOTICE FOR INFORMATION
CONCERNING REQUIREMENTS FOR MAINTAINING THIS REGISTRATION

ORIGINAL

TMLT6 (9/99)

**TO THE U.S. PATENT AND TRADEMARK OFFICE**
**Please stamp the date of receipt of the following document(s) and**
**return this card to us:**

**RE:** Jews for Jesus
**TITLE OF DOCUMENT(S):**

Combined Declaration of Use in Commerce/Application for
Renewal of Registration of Mark Under Sections 8 and 9
Specimen

**Reg. No.** 1,252,889
**File No.** 006656-000100US
**Date Due** October 4, 2003
**Date Mailed** October 30, 2002
**Atty/Secty.** JAH:daw
SF 1394192 v1

COMBINED DECLARATION OF USE IN COMMERCE/APPLICATION
FOR RENEWAL OF REGISTRATION OF MARK UNDER §§8&9
(15 USC §§1058 & 1059)

To the Assistant Commissioner for Trademarks:

Mark: **JEWS FOR JESUS**

Registration No.: 1,252,889

Registration Date: October 4, 1983

Int. Class: 16

Jews for Jesus, a California non-profit corporation, having a business address at 60 Haight Street, San Francisco, California 94102, is the owner of the above-identified registration.

Townsend and Townsend and Crew LLP whose postal address is 2 Embarcadero Center - 8th Floor, San Francisco, California 94111-3834 is hereby appointed the owner's representative upon whom notice or process in the proceedings affecting the mark may be served.

Please charge the filing fee of $500.00 ($500.00 x 1) to the Deposit Account of Townsend and Townsend and Crew, LLP No. 20-1430. Please charge any additional fees that may be due, or credit any overpayment to Deposit Account No. 20-1430.

The owner is using the mark in commerce on or in connection with the goods identified in the registration, as shown by the attached specimen showing the mark as currently used in commerce.

The registrant requests that the registration be renewed for the goods identified in the registration.

The undersigned being hereby warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 USC 1001 and that such willful false statements and the like may jeopardize the validity of this document, declares: that he is

properly authorized to execute this document on behalf of said owner, and all statements made of

his own knowledge are true and that all statements made on information and belief are believed

to be true.

Please direct any communications pertaining to this document to:

John A. Hughes, Esq.
TOWNSEND and TOWNSEND and CREW LLP
Two Embarcadero Center - 8th Floor
San Francisco, CA  94111-3834
(415) 576-0200
(415) 573-0300 - fax
jah@townsend.com

JEWS FOR JESUS

Date: ___10/24___ , 2002      By: _____
                              Name: _DAVE LIPKOWITZ_____
                              Title: _ASST. TREASURER_____

2

CERTIFICATE OF MAILING

I hereby certify that this correspondence is being deposited with the United States Postal Service as
first class mail in an envelope addressed to: Box Post Reg FEE, Commissioner for Trademarks, 2900
Crystal Drive, Arlington, VA 22202-3513 on October 30, 2002.

By:_____
    John A. Hughes

## TOWNSEND AND TOWNSEND AND CREW LLP

Two Embarcadero Center, 8th Floor
San Francisco, CA  94111-3834
415\576-0200
415\576-0300

SF 1398116 v1

3

Exhibit B

**B** Blogger™

---

## User Stats

| On Blogger Since | January 2005 |
|---|---|
| Profile Views | 54 |

# Whistle Blower

## Blogs

BLOG NAME                              TEAM MEMBERS

---

**Home** | **About** | **Buzz** | **Help** | **Language** | **Developers** | **Gear** | **Privacy** | Copyright © 1999 - 2005 Google

Exhibit C

Blogger    SEARCH    BlogThis!    GET YOUR OWN BLOG    NEXT BLOG»

# JewsForJesus

**Monday, May 09, 2005**

### Behold Your God

Jews for Jesus is wrapping up its five-year evangelism program later this year. We are looking forward to a complete and accurate statement of each and every initial goal of this program along with the corresponding result, whether reached or not. Will a full financial accounting be given regarding this program? We certainly look forward to an open and honest evaluation of this major project.

posted by Whistle Blower at 10:52 PM | 0 comments

---

**Saturday, February 05, 2005**

### Observations

David Brickner has gone to great pains to show how much he and Jews for Jesus have changed under his regime. As proof that everything is the same at the core, we recommend that you read the article that appeared in the Nov/Dec edition of Moment Magazine, and Mr. Brickner's angry, personalized response to the magazine to appear in the next issue. One would like to see how he personally attacked the integrity and professionalism of the author of the article, but the magazine did not present that letter.

## About

### About Me

**Name:** Whistle Blower
View my complete profile

### Previous

Behold Your God
Observations
First Post

### Archives

January 2005
February 2005
May 2005



was sincere, the knee-jerk reaction he had to the article fairly represents his continued style of "management by anger."

posted by Whistle Blower at 8:23 AM | 2 comments

**Sunday, January 30, 2005**

**First Post**

Jews for Jesus is the "name brand" in Fundamentalist missions to the Jews. They take pride in their confrontational style of evangelism, boasting that their mission is to "make the messiahship of jesus an unavoidable issue..." This blog is being established as a forum for those interested in exchanging both the positive and the negative aspects of the missions methodology, the state of relationship between the organization (or the church, etc) and the Jewish community at large, and the inner workings of the organization as compared to other missions/ministries/corporations in the United States and throughout the world. There are other sites that address these issues from one point of view or the other. This site is established for the purpose of meaningful exchange so that issues can be explored and to help people and pastors decide if Jewish missions should be supported, and if so, should this particular organization be considered.

posted by Whistle Blower at 1:43 PM | 0 comments

**Exhibit D**

**Thelen Reid & Priest LLP**

*Attorneys At Law*

Paul A. Winick
212.603.6756 Direct Dial
212.829.2059 Direct Fax
pwinick@thelenreid.com

875 Third Avenue
New York, NY 10022

Tel. 212.603.2000
Fax 212.603.2001
www.thelenreid.com

May 5, 2005

**VIA CERTIFIED MAIL**

Google, Inc.,
Legal Department
1600 Ampitheatre Parkway
Mountain View, CA 94043

Re:    **Infringement of the JEWS FOR JESUS mark at jewsforjesus.blogspot.com**

Dear Sir or Madam:

We are intellectual property counsel to Jews for Jesus, the lawful owner of the name and trademark JEWS FOR JESUS, which is used in connection with various goods and services, including religious publications. Jews for Jesus has continuously used the JEWS FOR JESUS mark for at least 33 years and continues to use the mark, throughout the United States and internationally, and therefore owns common-law rights to the mark. Additionally, Jews for Jesus has obtained various federal, state, and foreign registrations for its trademark, including U.S Federal Registration No. 1,252,889. This registration been in force since January 5, 1982 and has become incontestable under U.S. trademark law. It is hardly necessary to point out that the JEWS FOR JESUS mark is well established and has become a famous mark.

It has come to our client's attention that Google, Inc. ("Google") has, through its Blogger.com website and Blogspot.com service, created a third-level domain of "jewsforjesus" and is hosting a weblog at the url "jewsforjesus.blogspot.com" on behalf of a Google customer using the screen identity of "Whistle Blower." The weblog hosted at this url is titled "JewsForJesus." These uses of our client's trademark are unauthorized and are likely to cause confusion, mistake and deception among consumers as to the source of the weblog published at jewsforjesus.blogspot.com, and may lead the public to mistakenly believe that our client is in some way associated with, or otherwise sponsors or endorses that weblog. Moreover, the use by Google and its customer of the identical JEWS FOR JESUS mark as the third-level domain and title of the weblog serves to dilute the mark and the substantial goodwill our client has built up in the mark at significant expense and effort.

NEW YORK        SAN FRANCISCO        WASHINGTON, DC        LOS ANGELES        SILICON VALLEY        MORRISTOWN, NJ

May 5, 2005
Page 2

**Thelen Reid & Priest LLP**

Google's allocation of the third-level domain "jewsforjesus" and hosting of the weblog titled "JewsForJesus" on its servers at the url "jewsforjesus.blogspot.com" on behalf of a party other than our client Jews For Jesus is a clear encroachment upon our client's proprietary rights under trademark, unfair competition and anti-dilution law. Google's customer, using the screen identity of "Whistle Blower," by requesting allocation of a third-level domain identical to our client's mark, and maintaining a weblog at that domain with a title identical to our client's mark, has similarly encroached upon our client's rights. These actions have caused and will continue to cause irreparable harm unless they are ceased.

We note that Whistle Blower's actions with respect to the JEWS FOR JESUS mark also violate the Terms of Service for Blogspot.com. In particular, the use of our client's mark as a third-level domain and as the title for Whistle Blower's weblog certainly constitutes the posting or transmission of content that is unlawful, tortious, and that infringes any trademark or other proprietary rights of any party. Such conduct is expressly prohibited in Paragraph Four of the Terms of Service. In Paragraph Nine, Google retains the right to terminate any account or site for any reason, including if it believes the customer has "violated or acted inconsistently with the letter or spirit of the TOS."

In light of the serious and irreparable harm to our client, Jews for Jesus, we ask that Google immediately exercise its rights under the Terms of Service to shut down Whistle Blower's site at jewsforjesus.blogspot.com and allow Jews for Jesus to register that third-level domain for the purpose of establishing its own weblog at Blogspot.com.

Unless you advise us within fifteen (15) business days that you are willing to comply with our client's request, Jews for Jesus will have no choice but to consider legal action to stop the infringing activities of Google and its customer.

Very truly yours,

Paul A. Winick

PAW/pmf

NY #656939 v1

Exhibit E

**Thelen Reid & Priest LLP**

*Attorneys At Law*

Paul A. Winick

212.603.6756 Direct Dial
212.829.2059 Direct Fax
pwinick@thelenreid.com

875 Third Avenue
New York, NY 10022

Tel. 212.603.2000
Fax 212.603.2001
www.thelenreid.com

June 13, 2005

**VIA CERTIFIED MAIL**

Google, Inc.,
Legal Department
1600 Ampitheatre Parkway
Mountain View, CA 94043

Re:     **Infringement of the JEWS FOR JESUS mark at jewsforjesus.blogspot.com**

Dear Sir or Madam:

We are intellectual property counsel to Jews for Jesus, the lawful owner of the name and trademark JEWS FOR JESUS, which is used in connection with various goods and services, including religious publications. We wrote, in this capacity, in a letter dated May 5, 2005, to advise you that Google, Inc. ("Google") has, through its Blogger.com website and Blogspot.com service, created a third-level domain of "jewsforjesus" and is hosting a weblog at the url "jewsforjesus.blogspot.com" on behalf of a Google customer using the screen identity of "Whistle Blower," which infringe our client's rights in the JEWS FOR JESUS MARK. Our records indicate that Google received this letter by certified mail on May 11, 2005.

In our prior letter, we set out the bases for our client's infringement claims and requested a response from Google within fifteen business days. To date, we have not received any response. This letter serves to inform Google that if we do not receive any response by June 24, 2005, we will consider such total lack of response as evidence of Google's willful disregard for our client's rights and will proceed accordingly.

Very truly yours,

Paul A. Winick

PAW/pmf

NEW YORK          SAN FRANCISCO          WASHINGTON, DC          LOS ANGELES          SILICON VALLEY          MORRISTOWN, NJ

Exhibit F

**Winick, Paul**

| | |
|---|---|
| **From:** | Blogger Support [support@blogger.com] |
| **Sent:** | Friday, June 24, 2005 5:35 PM |
| **To:** | Winick, Paul |
| **Subject:** | [#236211] RE: Infringement of the JEWS FOR JESUS mark at jewsforjesus.blogspot.com |

Hello Paul,

We've received your letter regarding "Jews for Jesus" dated 6/13/05. Please note that Blogger is a provider of content creation tools, not a mediator of that content. We allow our users to create blogs, but we don't make any claims about the content of these pages. In cases where contact information for the author is listed on the page, we recommend working directly with this person to have this information removed or changed.

Sincerely,
Blogger Support